# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| RALPH CHAVOUS DUKE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-1024 |
| | ) | |
| PAUL THOMPSON, Acting Warden of | ) | |
| FCI PEKIN, | ) | |
| | ) | |
| Respondent. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) filed by Ralph Chavous Duke. The parties have submitted memoranda of law in support of and in opposition to the Petition. For the reasons stated below, the Court grants the Petition (Doc. 1).

### BACKGROUND

Petitioner is currently incarcerated at the Federal Correctional Institution in Pekin, Illinois. In 1989, Petitioner was convicted by a Minnesota federal jury of 1) participating in a continuing criminal enterprise to possess and distribute cocaine in violation of 21 U.S.C. § 848 (1988) (count 1); 2) aiding and abetting the attempt to possess with intent to distribute twenty kilograms of cocaine on May 17, 1989, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988) and 18 U.S.C. § 2 (1988) (count 2); 3) other instances of aiding and abetting the possession with intent to distribute smaller quantities of cocaine on various dates in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (counts 4, 5, 6, 7, 8); 4) three counts of using or carrying a firearm during

and in relation to a drug trafficking offense all in violation of 18 U.S.C. § 924(c)(1) (1988) (counts 28, 29, 30); and 5) conspiracy from 1984 to May 18, 1989, to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (count 32). *United States v. Duke*, 940 F.2d 1113, 1115 (8th Cir. 1991). Petitioner initially received separate but concurrent life sentences on counts 1, 2, and 32, but the Eighth Circuit remanded his case and ordered that either his conviction on count 1 or count 32 be vacated because the convictions for both continuing criminal enterprise and conspiracy violated the Double Jeopardy clause of the Fifth Amendment. His conviction and sentence were affirmed by the Eighth Circuit in all other respects. In addition to the sentences in relation to counts 1, 2 and 32, Petitioner was also sentenced to concurrent forty-year sentences on each of counts 4-8. 940 F.2d at 1115. Moreover, Petitioner was also sentenced to mandatory consecutive sentences of thirty years, five years, and five years for counts 28, 29, and 30, respectively, totaling forty consecutive years. *Id*. Just last year, a Minnesota district court granted a motion to reduce Petitioner's sentence under 18 U.S.C. § 3582(c)(2) based on Amendment 782 to the Sentencing Guidelines and reduced Petitioner's sentence of life plus 40 years consecutive to 365 months plus 40 years consecutive. *United States v. Duke*, No. 4:89-cr-00094-DSD-1, Doc. 264 (D. Minn. July 27, 2016).

To recap: Petitioner is serving concurrent terms of imprisonment of 365 and forty months, with an additional forty consecutive months to begin running when his 365 month term of imprisonment ends. It is clear to see why Petitioner is eager to shed himself of the 924(c) convictions if he can. With the current rules mandating federal prisoners serve out at least eighty-five percent of their incarceration terms,

2

Petitioner may only have had to serve out 310 months, which is roughly 26 years. Since he has been incarcerated since 1989, it is possible his 365 month term of imprisonment has already run out. Thus, if his 924(c) convictions are indeed infirm and vacated, Petitioner may be entitled to immediate release. Petitioner should be aware that the Court has not reviewed his actual Bureau of Prison records nor his presentence investigation report and thus the foregoing discussion was merely intended to give context as to the import of the instant petition from the Petitioner's perspective; not as any sort of guarantee that he is indeed entitled to immediate release if he is successful in this action.

Petitioner's procedural history is complex. In the period between his direct appeal and the instant § 2241 petition, Petitioner sought collateral relief multiple times. In 1993, Petitioner filed an unsuccessful motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 arguing that the Government used perjured testimony to secure his conviction. *See United States v. Duke*, 50 F.3d 571, 573 (8th Cir. 1995). Two years later, the United States Supreme Court held in *Bailey v. United States*, 516 U.S. 137 (1995), that the term "use" in 18 U.S.C. § 924(c) does not include mere possession but "require[d] evidence sufficient to show an active employment of the firearm by the defendant." *Id.* at 142-43, *see also In re Davenport*, 147 F.3d 605, 607 (7th Cir. 1998).

Petitioner then filed a second § 2255 motion with the district court, arguing that his § 924(c) convictions should be vacated because of *Bailey*. *See Duke v. United States*, No. 4:96-cv-00845-DSD (D. Minn.). The district court found that the gatekeeping mechanism of the Anti-Terrorism and Effective Death Penalty Act of

3

1996 was applicable to his second § 2255 motion and dismissed it without prejudice to his ability to seek the necessary approval from the Eighth Circuit Court of Appeals before seeking such relief in the district court. (Doc. 7-1 at 90-93); s*ee* 28 U.S.C. § 2255(h) ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals...."). Thereafter, Petitioner unsuccessfully sought such approval from the Eighth Circuit several times: in 1997, 2001, 2008, and 2012.

Petitioner now brings a petition for habeas relief under 28 U.S.C. § 2241. In it he argues his three convictions under 18 U.S.C. § 924(c) in counts 28, 29, and 30 must be vacated based on the Supreme Court's decision in *Bailey*. The Government agrees with Petitioner as to counts 29 and 30 but not as to count 28. Count 28 of the operative Indictment provided:

> On or about the 18th day of May, 1989, in the State and District of Minnesota, the defendant, RALPH CHAVOUS DUKE, a/k/a PLOOKIE, a/k/a PLUKEY, did knowingly and unlawfully use and carry a firearm, namely a .22 caliber pistol with silencer attached, during and in relation to the drug trafficking crimes set forth in Counts l and 32 of this indictment, felonies subject to prosecution in a court of the United States, all in violation of Title 18, United States Code, Section 924 (c)(1).

(Doc. 7-1 at 15). The relevant jury instructions provided as follows:

> The firearms count charges that the defendants used and carried firearms. It is sufficient if the United States proves either that firearms were used or carried; both do not have to be proved.
> ***
> To meet its burden of proving that a firearm was used during or in relation to a drug trafficking crime, the United States does not have to show that the defendant actually possessed either the firearms or the drugs. Proof of constructive possession may be sufficient.
>
> Proof that a person has in his house, apartment, or office a quantity of narcotics for distribution and a firearm may be sufficient to show beyond

4

a reasonable doubt that a firearm is being used during or in relation to a drug trafficking crime. Proof of the presence of a firearm for purposes of protecting the narcotics, or cash proceeds from sales of narcotics at a place where narcotics are distributed, may be sufficient to show beyond a reasonable doubt that the firearm is being used during or in relation to a drug trafficking crime.

You are the sole judges of the facts, and it is up to you to determine what evidence to accept and what weight to give it.

(Doc. 7-1 at 47-48). Finally, the Eighth Circuit wrote the following while affirming Petitioner's 924(c) convictions on direct appeal under a pre-*Bailey* understanding of the term "use":

> A weapon need not be actually brandished or discharged to be used, however, so long as "it was an integral part of [the defendant's] criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed." United States v. Matra, 841 F.2d 837, 843 (8th Cir. 1988). In drug-trafficking crimes, firearms are often used for protection or intimidation; their "presence and availability in light of the evident need demonstrates the use." United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir. 1985). Accord United States v. Michaels, 911 F.2d 131, 132 (8th Cir. 1990) ("[I]f a gun [was] available to the defendant, and if the gun was an integral part of the crime and increased the likelihood of its success, then it was used during and in relation to the crime."), cert. denied, 498 U.S. 1094, 111 S.Ct. 981, 112 L.Ed.2d 1066 (1991).
>
> ***
>
> In the spring of 1988, [Petitioner] called his nephew, Joseph Ballard, and told him to pick up the pistol from Marcel Duke. Ballard delivered the gun to [Petitioner] at the Delano house, where [Petitioner] "loaded it, and showed it to his friend Marvin [McCaleb], and went out in the yard, and shot it a few times." Trial Transcript vol. 7, at 88. During the six to eight weeks when the gun was kept at the Delano house, [Petitioner] also fired it in the presence of his Columbian source. Id. vol. 7, at 206-07. At some point, [Petitioner] had Ballard take the gun to the storage unit where it was seized on May 18, 1989.
>
> ***

> We think that the two occasions when [Petitioner] fired the gun in the presence of others constitute actual use within section 924(c); the public act of firing a pistol with a silencer can only be an advertisement of its availability if needed-clearly the sort of intimidation contemplated by our cases. See, e.g., LaGuardia, 774 F.2d at 321. Cf. United States v. Evans, 888 F.2d 891, 896 (D.C.Cir.1989) (although actual use not needed under section 924(c), act of pointing gun at government informant and co-defendant on two different occasions "suggests that the guns were, in fact, used to protect the drug stash"), cert. denied, 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990).

940 F.2d at 1119. The Government believes the Eighth Circuit's holding establishes that Petitioner cannot satisfy the third requirement under *Davenport*, which is demonstration of "a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding." *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). The Government contends that since there was evidence the gun with the silencer was fired on two separate occasions, the use and carry conviction for that gun is valid, thus no miscarriage of justice occurred.

## LEGAL STANDARDS

Federal prisoners like Petitioner who wish to collaterally attack their convictions or sentences ordinarily must generally do so under 28 U.S.C. § 2255. *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). They may petition under 28 U.S.C. § 2241 only in the rare circumstance in which the remedy provided under § 2255 "is inadequate or ineffective to test the legality of his detention." *See* 28 U.S.C. § 2255(e) (which is often referred to as "the Savings Clause"). The mere fact that Petitioner's claim would be a second or successive § 2255 motion does not render § 2255 inadequate or ineffective. *See In re Davenport*, 147 F.3d at 609-10. Moreover, the mere fact that a movant lost on his § 2255 motion does not render § 2255 an inadequate or ineffective remedy to challenge the legality of his sentence.

6

## DISCUSSION

### I. *Davenport* Requirements Are Satisfied As To Counts 29 And 30.

A federal prisoner must meet three criteria in order to invoke the Savings Clause of 28 U.S.C. § 2255(e) and obtain collateral relief pursuant to 28 U.S.C. § 2241. First, a prisoner "must show that he relies on a [new] statutory-interpretation case rather than a constitutional case;" second, he "must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion;" and third, "[the] sentence enhancement [must] have been a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding." *Brown*, 719 F.3d 583, 586 (7th Cir. 2013) (citations omitted) (internal quotation marks omitted).

*Bailey*, 516 U.S. 137, is a case of statutory interpretation that has been held to apply retroactively. *See In re Davenport*, 147 F.3d at 610 citing *Bousley v. United States*, 523 U.S. 614 (1998). Petitioner was previously unable to make use of *Bailey* because the case had not been decided until well after his conviction, his direct appeal, and his first post-conviction 2255 motion. Moreover, even after *Bailey* was decided the Petitioner could not make use of the decision in a successive 2255 motion because *Bailey* is a case of statutory interpretation and not a "new rule of constitutional law" as required by 28 U.S.C. § 2255(h).

Finally, the Government's citation of the third prong of the *Davenport* requirements—"that the error is 'grave enough ... to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding,' such as one resulting in 'a conviction for a crime of which he was innocent'"—leads the Court to conclude that

7

the Government is conceding the Petitioner's 924(c) convictions in relation to counts 29 and 30, are such grave errors capable of correction upon collateral review despite the fact that the Government did not specifically explain why.

In *Davenport*, the court characterized appellant Nichols' 924(c) conviction based on the pre-*Bailey* expansive definition of the term "use" that encompassed mere possession as being tantamount to being convicted of a non-existent crime, 147 F.3d at 610, and as a "fundamental defect." *Id*. at 611. Based upon that characterization, to the extent that Petitioner was convicted for merely possessing weapons and not convicted of actually actively using or carrying them, it is clear that he too was convicted of conduct that was not criminalized under the 1991 version of 18 U.S.C. § 924(c).[1] For these reasons, Petitioner, a federal prisoner, may make use of a § 2241 petition in lieu of a successive § 2255 motion in this case.

Petitioner's convictions for counts 29 and 30 of the Indictment must be overturned because of *Bailey*. Petitioner did not actively employ the two guns at issue in these two convictions. Both guns were merely present in the home were Petitioner resided and ran much of his drug empire but neither gun was actively employed for any purpose in relation to the ongoing drug conspiracy. The Eighth Circuit held that

---

[1] At the time of Petitioner's conviction in this case, § 924(c) provided that "[w]hoever, **during and in relation to** any crime of violence or drug trafficking crime. . . for which he may be prosecuted in a court of the United States, **uses or carries** a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years." 18 U.S.C. § 924(c)(1) (1991).

Petitioner was properly convicted of using these two guns because the law at that time was that "[i]n drug-trafficking crimes, firearms are often used for protection or intimidation; their 'presence and availability in light of the evident need demonstrates the use.' *United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir. 1985)." *Duke*, 940 F.2d at 1118. That line of thinking was expressly rejected by *Bailey*, 516 U.S. at 149-150. Because Petitioner did not actively employ either gun in counts 29 or 30, his convictions on those counts cannot stand and are hereby vacated.

## II. Petitioner's Conviction For The Gun With The Silencer, Count 28, Was Also A Miscarriage Of Justice And Should Be Vacated.

The Government contends that Count 28 remains valid because there was evidence presented to the jury that proved Petitioner actively employed and carried the firearm under the post-*Bailey* interpretation of the statute. *Swedzinski v. United States*, 160 F.3d 498, 501 (8th Cir. 1998). Petitioner responds that the sufficiency of the evidence is not the correct focus of the inquiry, but instead, under *United States v. Robinson*, 96 F.3d 246, 250 (7th Cir. 1996), where the jury instructions given allowed the jury to convict the defendant of using a firearm without evidence that he actively employed it and evidence indicating mere passive possession was presented to the jury, the conviction must be reversed and the cause remanded for a new trial, since it cannot be determined whether the jury convicted on the proper basis or the improper basis. *Robinson* was a case on direct appeal but its rule has been utilized and applied on collateral review. *See, e.g., Nichols v. United States*, 215 F.3d 1330, 2000 WL 689186 (7th Cir. 2000). Moreover, in *Woodruff v. United States*, 131 F.3d

9

1238, the Seventh Circuit expressly reaffirmed that the rule of *Bailey* must also be applied to cases on direct appeal and collateral review. *Id.* at 1242.

In *Swedzinski*, the court discussed the sufficiency of the evidence argument in the context of deciding whether the petitioner could establish cause and prejudice for his procedural default of the *Bailey* issue. 160 F.3d at 501. In this judicial circuit, a petitioner convicted of a 924(c) violation before *Bailey* was decided need not overcome procedural default to mount a *Bailey* challenge on collateral review. *See Stanback v, United States*, 113 F.3d 651, 654-56. And since this is not a case where the petitioner's reliance on 28 U.S.C. § 2241 is conditioned upon a change in the law caused by a circuit split in substantive law between the circuit of conviction and circuit of incarceration, the Court sees no impediment to applying Seventh Circuit law to this case.

Here, the government concedes that the jury was improperly instructed with the pre-*Bailey* understanding of "use" of a firearm. The improper instruction provided as follows:

> To meet its burden of proving that a firearm was used during or in relation to a drug trafficking crime, the United States does not have to show that the defendant actually possessed either the firearms or the drugs. Proof of constructive possession may be sufficient.
>
> Proof that a person has in his house, apartment, or office a quantity of narcotics for distribution and a firearm may be sufficient to show beyond a reasonable doubt that a firearm is being used during or in relation to a drug trafficking crime. Proof of the presence of a firearm for purposes of protecting the narcotics, or cash proceeds from sales of narcotics at a place where narcotics are distributed, may be sufficient to show beyond a reasonable doubt that the firearm is being used during or in relation to a drug trafficking crime.
>
> You are the sole judges of the facts, and it is up to you to determine what evidence to accept and what weight to give it.

(Doc. 7-1 at 46). In *Nichols*, the Seventh Circuit applied *Robinson* and stated in instances where "some of the evidence presented could qualify as either active-employment 'use' or as 'carry,' but other firearms evidence presented exemplifies only possession or some other type of now-defunct, inactive 'use,' we will reverse the conviction and remand for a new trial, since we cannot be sure whether the jury convicted on the proper basis or the improper basis." 215 F.3d 1330, 2000 WL 689186 at *2. The only reason Nichols' *Bailey* challenge failed is that there was "no countervailing evidence indicating passive possession" presented in his case. *Id*. That is not the case here.

Here, there was evidence presented to the jury that indicated passive possession as well as argument inviting the jury to take assurance that it could find Petitioner guilty on a theory of passive possession as well as a theory of active possession. For example, the Government argued to the jury the following:

> I want to talk a little bit about this silencer.
>
> You may ask, <u>"Well, how can he be using or carrying something when it is sitting in his bedroom or in his storage locker?"</u> The Judge is going to tell you what using or carrying means for purposes of this law. It's a term of art. <u>And using and carrying extends to having it in a place where drugs are kept.</u>
>
> Now with this silencer you know that he showed it to two coconspirators. If you believe Joe Ballard and Marvin McCaleb, he showed it to both of them. The thing on its fact is intimidating. He used it to control those two people. He had the other guns at the Delano house to protect his money – which you know he kept there because he counted it there with Shawn Regan. <u>He had those guns at Delano to protect the drugs that came in there.</u> That is what using or carrying means for purpose of this law.
>
> <u>The gun doesn't have to be fired, nobody has to be shot with it or anything like that, but it is still used or carried within the meaning of the law. It is kind of like having a missile sitting in a silo in North</u>

11

> Dakota. All right? Nobody is using it at the moment. Nobody is carrying it around on a truck getting ready to fire it off. But we are still using it. We have it there. It is in readiness.

(Trial Transcript of Proceedings, No. 4-89-cr-00094, December 20, 1989 attached as Exhibit A (emphasis added)). Thus, as the transcript shows, the Government offered evidence and argument of passive possession to satisfy the elements of the use and carry offense in addition to evidence to support a conclusion that Petitioner actually actively used the firearm at issue.

*Bailey*, 516 U.S. at 142-43, held that the term "use" in 18 U.S.C. § 924(c) does not include mere possession but "require[d] evidence sufficient to show an active employment of the firearm by the defendant." S*ee also Davenport*, 147 F.3d at 607. *Robinson* held that where a jury instruction on "use" was clearly flawed, a § 924(c)(1) conviction will be reversed and remanded in instances "where some of the evidence presented could qualify as either active-employment 'use' or as 'carry,' but other firearms evidence presented exemplifies only possession or some other type of now-defunct, inactive 'use.'" Both *Bailey* and *Robinson* have been applied on collateral review. Petitioner's conviction for Count 28 fits squarely into the scenario discussed above. Thus, Seventh Circuit case law is clear that in such instances, a 924(c) conviction secured in such a way should be reversed and remanded for new trial.

## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is GRANTED.

IT IS HEREBY ORDERED:

1) Petitioner's convictions for violating Counts 28, 29, and 30, using or carrying a firearm during and in relation to a drug trafficking offense all in violation of 18 U.S.C. § 924(c)(1) in *United States v. Duke*, No. 4:89-cr-00094-DSD-1 are VACATED;

2) The Clerk is DIRECTED to send copies of this Opinion and Order to Petitioner; Respondent; the Clerk of the United States District Court for the District of Minnesota, and the United States Attorney for the District of Minnesota;

3) The Government is given thirty days from the entry of this Opinion and Order to provide written notice to the Petitioner, Respondent and the United States District Court for the District of Minnesota as to whether the Government wishes to retry Petitioner on Count 28 in Case No. 4:89-cr-00094-DSD-1;

4) Should the Government decline to retry Petitioner or fail to provide notice as to its intent to retry as directed above, Respondent is directed to release Petitioner from custody if the Respondent determines Petitioner has served his 365 months sentence.

IT IS SO ORDERED.

CASE TERMINATED.

Entered this <u>19th</u> day of September, 2017.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge

# Exhibit A

*Clerk of Court File Copy*

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

FOURTH DIVISION

---

| | |
|---|---|
| United States of America, | CASE NO. Cr. 4-89-94 (1), (7), (8), (9), (13), (14) |
| Plaintiff, | |
| vs. | DATE: December 20, 1989 |
| Ralph Duke, Serena Nunn, Kim Willis, Shawn Regan, Walter Hughes, Doris Admon, | MINNEAPOLIS, MN |
| Defendants. | |

---

## VOLUME XV

### TRANSCRIPT OF PROCEEDINGS

BEFORE U.S. DISTRICT JUDGE DAVID S. DOTY AND A JURY

APPEARANCES:

For Plaintiff: JON HOPEMAN and DENISE REILLY

For Defendant: JOE FRIEDBERG for Ralph Duke
BARRY VOSS for Serena Nunn
JOHN WYLDE, JR. for Kim Willis
FAISON SESSOMS for Shawn Regan
PAUL ENGH for Walter Hughes
MARK PETERSON for Doris Admon

(NOTE: The Index page is last page of this volume.)

FILED MAY 18 1990
FRANCIS E. DOSAL, CLERK
DEPUTY CLERK'S INITIALS

XV-198

he counted it there with Shawn Regan. He had those guns at Delano to protect the drugs that came in there. That is what using or carrying means for purposes of this law.

The gun doesn't have to be fired, nobody has to be shot with it or anything like that, but it is still used or carried within the meaning of the law. It is kind of like having a missile sitting in a silo in North Dakota. All right? Nobody is using it at the moment. Nobody is carrying it around on a truck getting ready to fire it off. But we are still using it. We have it there. It is in readiness.

The same thing with these weapons.

THE COURT: About three minutes, Counsel.

MR. HOPEMAN: Yes, sir, thank you.

Now, finally, we have certain criticisms about the way the investigation should have been run.

"Well, they should have made undercover buys. Well, they should have had more success with their reverse. Well, they should have had more success with their search warrants. They should have fingerprinted this or they should have fingerprinted that."

Now, I am not going to go into all of these different suggestions that should have -- that have been made to you as to how things should have been done. We don't have the time and, by the time I got done, you wouldn't be hearing

Admon and Ralph Nunn and Ralph Duke are all parts of the elephant, they are all essential parts of the conspiracy and, without them all, it doesn't work.

The conspiracy here was this: To run the cocaine market in the Twin Cities during the time charged.

And I think you can see they did a pretty good job of it.

I want to talk a little bit about this silencer.

You know the facts. Ralph Duke is charged in Count 26 with using or carrying a .22 caliber gun in the course of a drug felony. And in Count 29 with the revolver in the book, same charge. And with Count 30 the loaded Uzi semi-automatic pistol found in his bedroom.

You may ask, "Well, how can he be using or carrying something when it is sitting in his bedroom or in his storage locker?" The Judge is going to tell you what using or carrying means for purposes of this law. It's a term of art. And using and carrying extends to having it in a place where drugs are kept.

Now, with this silencer you know that he showed it to two co-conspirators. If you believe Joe Ballard and Marvin McCaleb, he showed it to both of them. The thing on its face is intimidating. He used it to control those two people. He had the other guns at the Delano house to protect his money -- which you know he kept there because

of 19.

Two essential elements are required to be proved in order to establish the offense of use of a firearm during and in relation to a drug trafficking crime as follows:

First: That the defendant committed a drug trafficking crime for which he might be prosecuted in a United States Court; and,

Second: That during or in relation to the drug trafficking crime, the defendant used or carried a firearm.

Title 18, United States Code, Section 921 (a) (3) defines a firearm as including any weapon which is designed to or may readily be converted to expel a projectile by the action of explosion, and includes any handgun, rifle or shotgun.

The firearms count charges that the defendants used and carried firearms. It is sufficient if the United States proves either that firearms were used or carried; both do not have to be proved.

To meet its burden of proving that a firearm was used during or in relation to a drug trafficking crime, the United States does not have to show that the defendant actually possessed either the firearms or the drugs. Proof of constructive possession may be sufficient.

Proof that a person has in his house, apartment, or

office a quantity of narcotics for distribution and a firearm may be sufficient to show beyond a reasonable doubt that a firearm is being used during or in relation to a drug trafficking crime. Proof of the presence of a firearm for purposes of protecting the narcotics, or cash proceeds from sales of narcotics at a place where narcotics are distributed, may be sufficient to show beyond a reasonable doubt that the firearm is being used during or in relation to a drug trafficking crime.

You are the sole judges of the facts, and it is up to you to determine what evidence to accept and what weight to give it.

The crime of possession of cocaine with the intent to distribute it, the attempt to so possess cocaine, conspiracy to distribute cocaine, and continuing criminal enterprise, charged in Counts 1, 2, 18 and 32 of the Indictment are drug trafficking crimes for which a defendant may be prosecuted in a United States Court.

Counts 4, 5, 6, 7, 8, 9, 13, 14, 15 and 16 of the Indictment charge the defendants Ralph Chavous Duke, Shawn Quinton Regan and Walter Leslie Hughes with distributing cocaine at the time charged in violation of Title 21, United States Code, Section 841 (a) (1).

The law provides that:

It shall be unlawful for any person knowingly or